IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BONNIE M. MISICK,                              06-CV-6319-BR

      Plaintiff,                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendant.


**MARTIN J. McKEOWN**
Martin J. McKeown, PC
P.O. Box 11650
Eugene, OR 97440
(541) 683-6235

      Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**JEFFREY HUGH BAIRD**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2205

        Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Bonnie M. Misick seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction under 42 U.S.C. § 405(g) and 1383.

      Following a review of the record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.


**ADMINISTRATIVE HISTORY**

      Misick applied for DIB on July 25, 2003.  Tr. 17.[1]  She alleges a disability onset date of April 14, 1997.  Tr. 18.  Her application was denied initially and on reconsideration.  Tr. 44, 49.

      An Administrative Law Judge (ALJ) held a hearing on February 14, 2006, at which Misick; her husband, Ray Misick;

---

      [1] Citations to the official transcript filed with the Court on February 14, 2007, are cited as "Tr."

2 - OPINION AND ORDER

her daughter, Ann Marie Misick-Teipel; and Vocational Expert (VE) Patricia Lesh testified.  Tr. 410.  Misick was represented by an attorney.  Tr. 410.

On April 13, 2006, the ALJ found Misick did not establish she was disabled before December 31, 2001, the date her insured status expired, and, therefore, she is not entitled to DIB. Tr. 17-29.  That decision became the Commissioner's final decision on October 20, 2006, when the Appeals Council denied Misick's request for review.  Tr. 6-8.

## BACKGROUND

Born on May 14, 1958, Misick was 38 years old at the time of her alleged disability onset date and 47 years old on the date of the hearing.  Tr. 18, 27.  She has a high-school education and a CNA certification.  Tr. 18.  Misick's past work experience includes working with handicapped persons and senior citizens, working as a stock shelver for American Greetings, and working as a housekeeper and cleaner.  Tr. 226, 414.

Misick asserts her impairments include fibromyalgia, myofascial pain, cervical spine degeneration, depression, and anxiety disorders.  Tr. 131-37, 147, 154-55, 387.

## STANDARDS

The initial burden of proof rests on the claimant to

3 - OPINION AND ORDER

establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,*

466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.  The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments."  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner

5 - OPINION AND ORDER

determines the claimant's impairments meet or equal "one
of a number of listed impairments that the [Commissioner]
acknowledges are so severe as to preclude substantial gainful
activity." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R.
§ 404.1520(a)(4)(iii). The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404, subpart
P, appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must
determine the claimant's residual functional capacity (RFC),
which is an assessment of the sustained, work-related activities
that the claimant can still do on a regular and continuing basis
despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc.
Sec. Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work that she has done in the past. *Stout*, 454 F.3d at 1052.
*See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy. *Stout*, 454 F.3d at 1052. *See also* 20
C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do. *Stout*, 454 F.3d at
1052. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## II.   **Insured Status Requirements for DIB.**

It is undisputed that Misick had insured status to receive DIB benefits through December 31, 2001, pursuant to Title II, but her insurance lapsed after that date.  Tr. 61, 287.  Thus, to prevail on her DIB claim, Misick is required to establish that she was disabled on or before December 31, 2001, which was the end of the "relevant period."  *See* 42 U.S.C. § 423(a)(1)(A).  *See also Thomas v. Barnhart*, 278 F.3d 847, 954-55 (9th Cir. 2002)(a DIB claimant must establish her period of disability began while she was insured for DIB); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)(DIB unavailable when the claimant did not establish she was disabled on or before the date her disability insured status lapsed).


## ALJ'S FINDINGS

At Step One, the ALJ found Misick has not engaged in substantial gainful activity since the onset of her alleged disability.  Tr. 18.

At Step Two, the ALJ found Misick's cervical spine strain,

degenerative disc disease, and possible fibromyalgia are severe. Tr. 25.

At Step Three, the ALJ found Misick's impairments do not meet or equal a Listing.  Tr. 18, 25.

At Step Four, the ALJ found Misick did not retain the RFC to perform past relevant work.  Tr. 29.

At Step Five, the ALJ found Misick retained the RFC to perform a full range of light work during the relevant period at several jobs that exist in the national economy such as assembler, cashier, and motel cleaner.  Tr. 29.  Thus, the ALJ concluded Misick was not disabled during the relevant period, and, therefore, she is not entitled to DIB.


## DISCUSSION

Misick contends the ALJ erred in his evaluation of the medical opinions of Sylvia Emory, M.D.; James Morris, M.D.; and Ron Lechnyr, Ph.D.  Misick also contends the ALJ improperly evaluated her credibility and erred when he determined her RFC.

**I.   Medical Opinions.**

When the record contains conflicting medical evidence, the ALJ is responsible for resolving the conflict.  *Thomas*, 278 F.3d at 956.  An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings

8 - OPINION AND ORDER

setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ also must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes*, 881 F.2d at 751.  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id.*  *See also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

**A.    Dr. Emory.**

Dr. Emory was Misick's treating physician from March 1998 to at least November 2003.  Tr. 196-230.

**1.    Dr. Emory's Opinion.**

On October 23, 1996, Dr. Emory reported Misick suffered from cervical and thoracic strain as a result of an on-the-job injury.  Tr. 228.  Misick later testified this injury occurred in part as the result of a building truss falling and hitting her in the upper body.  Tr. 416.

On November 13, 1997, Dr. Emory reported Misick was suffering from

> [c]hronic recurrent neck pain secondary to
> arthritis.  Told her that will likely limit
> the kind of work she can do and she should
> avoid doing stuff with a lot of upper-body

motion and lifting, especially because her
prior career was doing cleaning.  I don't
think she can do that.  Her sleep is getting
disturbed.

Tr. 220.

### 2.   The ALJ's Decision.

Even though Dr. Emory concluded it was unlikely Misick
would be able to return to her prior career as a housekeeper and
cleaner, the ALJ pointed out that Dr. Emory did not find Misick's
spinal strains completely precluded her from working during the
relevant period.  Tr. 20.  The ALJ also noted Dr. Emory only
listed Tylenol P.M. and St. John's Wort as the medications taken
by Misick to relieve her pain.  In addition, Dr. Emory opined
Misick's sleeplessness and "aching" were due to her daughter and
granddaughter moving in with her rather than intractable pain.
Tr. 20, 217.  The ALJ also points out that the record does not
reflect Misick saw Dr. Emory at all during 2001.  Tr. 21, 212-
13.[2]  Thus, Dr. Emory's opinions during the relevant period about
Misick's condition do not lead to a conclusion that Misick was
disabled from April 14, 1997, to December 31, 2001, when her
insured status expired.

In addition, the ALJ noted the opinion of Timothy Hill,
M.D., a physician who also treated Misick from January 30, 1997,

_____

[2] The Court notes a handwritten chart note dated "2-26-01"
indicates Misick may have seen Dr. Emory in 2001, but it is not
conclusive because it is attached to January 2002 records and may
well be misdated.  Tr. 212.

to February 20, 1998.  Tr. 131-44.  During Dr. Hill's initial
evaluation of Misick for cervical and thoracic strains, Dr. Hill
opined:  "I do feel the patient is capable of working light duty.
By choice, she is on unpaid leave."  Tr. 19, 143.  On April 21,
1997, Dr. Hill concluded Misick was capable of working within
vocational limits of "[l]ifting limited to 25 lb[s.] maximum;
occasional bending and twisting."  Tr. 19, 137.  Dr. Hill's
opinion, therefore, contradicts the opinion of Dr. Emory for that
period.

Based on this record, the Court concludes the ALJ did
not err when he rejected parts of Dr. Emory's opinion because the
ALJ provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

**B.  Dr. Morris.**

Dr. Morris was one of Misick's treating physicians and began
treating Misick in April 1998 after a referral from Dr. Emory.
Tr. 331.

**1.  Dr. Morris's Opinion.**

At the time she began seeing Dr. Morris, Misick's
primary complaint was an ache across her shoulders that radiated
into her neck and back.  Tr. 19, 331.  Misick reported symptoms
that included headaches, back pain, numbness and tingling,
chronic fatigue, difficulty sleeping and concentrating, and loss
of energy.  Tr. 19-20, 332.  On April 1, 1998, Dr. Morris opined,

11 - OPINION AND ORDER

"I believe Ms. Misick does suffer from Fibromyalgia Syndrome, although she does not meet strict criteria." Tr. 20, 332. Dr. Morris ended this examination with written instructions that included exercise, stress reduction, and joining a support group. He noted he would be happy to see Misick again in six weeks. Tr. 333-34.

Misick, however, did not visit Dr. Morris again until August 1999, which was about sixteen months after his initial evaluation. Tr. 20, 330. At that time, Misick reported she was not following Dr. Morris's previous recommendations to get regular exercise, to join a support group, etc. Tr. 20, 330. During an October 1999 visit, Misick attributed improvement in her pain symptoms to a recent four-week vacation. Tr. 20, 330. In February 2000, Misick reported she was having more symptoms and pain in her neck. Tr. 329. Dr. Morris attributed this "flare up . . . to stress and situational events." Tr. 20, 329. Dr. Morris recommended stress management, meditation, and a magnesium supplement. Tr. 20, 329.

In April 2001, Misick saw Dr. Morris again and complained about headaches, stomach upset, and tiredness. Tr. 21, 327. Misick again reported she was experiencing a great deal of stress stemming from her daughter's ongoing custody battle. Tr. 21, 327. With respect to Misick's fibromyalgia symptoms, Dr. Morris opined Misick was "doing fairly well with a

stable FMS picture."  Tr. 21, 327.  This apparently is the last
record of Dr. Morris's treatment of Misick before the relevant
period ended on December 31, 2001.

Dr. Morris saw Misick again on November 19, 2003.  At that
time, Dr. Morris concluded Misick's symptoms were more severe
than he previously reported.  Tr. 308-09.  Dr. Morris opined
Misick could lift or carry 10 pounds only occasionally and could
occasionally bend, squat, crawl, climb, or reach.  He also found
Misick had moderate difficulties at unprotected heights; when
near moving machinery; when exposed to marked temperature
changes, humidity changes, dust, and fumes; and when driving.
Tr. 308-09.

Dr. Morris continued to treat Misick approximately once
every six months.  Tr. 394.  On January 26, 2006, Dr. Morris
completed a Multiple Impairment Questionnaire concerning Misick's
treatment and symptoms in which Dr. Morris opined Misick's
overall condition (degenerative cervical spine disease,
myofascial pain syndrome, fibromyalgia, and depression) is
"permanent and will gradually deteriorate with time."  Tr. 394,
401.  Moreover, Dr. Morris reported Misick's symptoms would
increase if she were placed in a competitive work environment.
Tr. 396.  The Multiple Impairment Questionnaire included the
following question:  "In your best medical opinion, what is the
earliest date that the description of symptoms and limitations in

this questionnaire applies?"  Dr. Morris's answer was "1998."
Tr. 401.  Dr. Morris further opined he could not completely
relieve Misick's pain if she were working eight hours every day.
Tr. 403.

      **2.  The ALJ's Decision.**

      The ALJ noted Dr. Morris's statement that Misick was
apparently noncompliant with the treatment recommendations given
in 1998.  Tr. 20-21.  In any event, the record reflects Misick's
physical pain and sleeping difficulties were improving with
physical therapy, exercise, stress reduction, and medication
during the relevant period.  Tr. 20-21, 146, 330.

      The ALJ rejected Dr. Morris's opinions that were issued
after December 31, 2001, and specifically rejected Dr. Morris's
November 19, 2003, Physical Capacities Evaluation in which he
opined Misick has cognitive impairments that interfere with
functioning and that she cannot tolerate a stressful environment.
Tr. 22, 308-09.  The ALJ found Dr. Morris's later opinions were
not consistent with his earlier opinions and, moreover, there was
not any reason to conclude that Dr. Morris's 2003 Physical
Capacities Evaluation was pertinent to the "relevant period" that
expired approximately two years earlier on December 31, 2001.
Tr. 22, 61, 287, 308-09.

      Nevertheless, Misick contends the ALJ erred when he
failed to consider Dr. Morris's later opinions.  Misick concedes

14 - OPINION AND ORDER

Dr. Morris did not indicate in his Physical Capacities Evaluation whether he was referring to symptoms that existed during the relevant period, but Misick asserts this deficiency was "cured" in Dr. Morris's responses in the January 2006 Multiple Impairment Questionnaire.  Tr. 26, 394.  As noted, Dr. Morris indicated in that Questionnaire that he believed 1998 was "the earliest date that the description of symptoms and limitations" described in the Questionnaire were documented.  Tr. 401.  Misick, therefore, maintains the ALJ should have considered this part of Dr. Morris's opinion because it related to the relevant period.  The ALJ, however, rejected Dr. Morris's opinion set out in the Questionnaire on the ground that it was given nearly five years after the relevant period ended, and, therefore, was not germane.  Tr. 26.  The ALJ noted Dr. Morris indicated during the relevant period that Misick's symptoms significantly improved with treatment and that Misick saw him only once in 2001.  Tr. 21.  Moreover, the mere fact that Dr. Morris believed Misick's symptoms began as early as 1998 does not establish that Dr. Morris believed Misick to be disabled during the relevant period.  Tr. 331.  *See Thomas*, 278 F.3d at 954-55 (a DIB claimant must establish she was disabled while she was insured for DIB).

Accordingly, the Court concludes the ALJ did not err when he rejected parts of Dr. Morris's opinions because the ALJ provided legally sufficient reasons supported by the record for

15 - OPINION AND ORDER

doing so.

  **C. Dr. Lechnyr.**

  Dr. Lechnyr is a clinical medical psychologist.  Tr. 152.
He began treating Misick in April 2000 to "establish a
coordinated multi-disciplinary out-patient pain management
approach to [her] treatment."  Tr. 152.

  **1. Dr. Lechnyr's Opinion.**

  During his initial treatment-intake examination of
Misick on April 24, 2000, Dr. Lechnyr reported Misick showed
signs of depression and avoidant personality traits.  Tr. 20,
153-54.  At that time, Dr. Lechnyr assessed Misick as having a
global assessment functioning (GAF) score of 55.[3]  Tr. 155.  On
May 16, 2000, however, Dr. Lechnyr noted Misick responded well to
treatment.  Tr. 149.  By the end of 2000, Dr. Lechnyr reported
Misick appeared to improve.  Tr. 146-48.  Indeed, in a "Treatment
Termination Form" dated November 15, 2000, Dr. Lechnyr assessed
Misick with a GAF score of 75.  Tr. 21, 146-48.  Dr. Lechnyr also
opined Misick "utilized therapy well" during treatment "and made
progress in being able to stabilize functioning issues.  [She]
may require further therapy at some later point if problems in
functioning are noted."  Tr. 148.  Dr. Lechnyr apparently did not

---

  [3] The GAF scale is a means of reporting the clinician's
judgment of the individual's overall level of functioning on a
scale of 1 to 100.  *Diagnostic and Statistical Manual of Mental
Disorders* (*DSM-IV*) 30-32 (4th ed. 1994).

treat Misick again during the relevant period.

On September 21, 2004, Dr. Lechnyr again assessed Misick at the referral of Dr. Morris.  Tr. 376-81.  At this time, Dr. Lechnyr assessed Misick with a GAF score of 60.  In an October 27, 2004, letter, Dr. Lechnyr noted Misick was scheduled to resume treatment, but she missed at least three sessions. Tr. 23, 375.  On August 30, 2005, Misick informed Dr. Lechner that she was not interested in further treatment and only wanted a Social Security evaluation from him.  Tr. 370.

Dr. Lechner provided a Psychiatric Review Technique (PRT) form to the Social Security Administration on January 26, 2006.  Tr. 382-93.  Dr. Lechner opined Misick had depressive syndrome, generalized persistent anxiety, and avoidant personality disorder.  Tr. 385, 387, 389.  Moreover, Dr Lechner assessed Misick's functional limitations as "marked" as they applied to restrictions on daily living; difficulties maintaining social functioning; difficulties maintaining concentration, persistent, or pace; and episodes of extended decompression. Tr. 392.

### 2.   The ALJ's Opinion.

The ALJ rejected Dr. Lechnyr's January 26, 2006, PRT on the ground that it was not germane because his earlier opinions during the relevant period did not support a finding of disability and because Dr. Lechnyr did not specifically indicate

in the PRT that he believed Misick was disabled during the
relevant period.  Tr. 23, 26.  Even though the PRT purportedly
covered the period from April 24, 2000, to August 30, 2005, the
ALJ noted Dr. Lechnyr only saw Misick a few times during the
relevant period.  Tr. 26, 148, 376-81.  In any event, Dr.
Lechnyr's views of Misick's condition after December 31, 2001,
as reflected in the PRT do not cast doubt on his prior opinion
about Misick's condition during the relevant period.  As noted,
Dr. Lechnyr diagnosed Misick with a GAF of 75 in November 2001
and reported she had "made progress in being able to stabilize
functioning issues" and appeared to improve.  Tr. 23, 148.
Moreover, Dr. Lechnyr does not indicate in the PRT that he
believed Misick was disabled during the relevant period.
Tr. 382.  Thus, Dr. Lechnyr's opinion does not support Misick's
assertion that she was disabled during the relevant period.  *See*
*Thomas*, 278 F.3d at 954-55 (a DIB claimant must establish her
period of disability began while she was insured for DIB).

        Accordingly, the Court concludes the ALJ did not err
when he rejected parts of Dr. Lechnyr's opinion because the ALJ
provided legally sufficient reasons supported by evidence in the
record for doing so.

## II.  Misick's Credibility.

    The ALJ's credibility "findings must be sufficiently
specific to allow a reviewing court to conclude the ALJ rejected

the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004)(internal citations omitted).

When assessing a claimant's credibility, the ALJ must apply the threshold test articulated in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). *See also Batson*, 359 F.3d at 1196. The ALJ first must determine whether there is objective medical evidence of an impairment and whether the impairment could reasonably cause some degree of the claimant's symptom(s). *Batson*, 359 F.3d at 1196. If the claimant produces evidence to meet this test and there is not any evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific findings stating clear and convincing reasons for doing so." *Id.* (citations omitted). The ALJ may use ordinary techniques of determining credibility such as the "claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). In addition, the ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

**A.   Misick's Testimony.**

As noted, Misick testified her prior work experience included working in restaurants, working with handicapped persons and senior citizens, working as a stock shelver for American Greetings, and working as a housekeeper and cleaner.  Tr. 226, 414.  She and her husband built a home in Dallas, Oregon, before moving to Eugene, Oregon, and were building another home when Misick was hit in the upper body by a falling truss in 1996 or 1997.  Tr. 415-16.  Misick asserts she also suffered whiplash around this time.  Tr. 418.

Following the truss accident, Misick worked for at least six more months performing light-duty work.  Tr. 417.  Misick contends it was nearly 18 months after the falling truss hit her before she was diagnosed with fibromyalgia.  Tr. 418.

**B.   The ALJ's Decision.**

The ALJ considered only the above portion of Misick's testimony because the ALJ concluded the remainder of her testimony was directed to her present symptoms rather than to her symptoms during the relevant period.  Tr. 24, 418-22.  The ALJ, however, found Misick was "credible to the extent that the clinical and objective findings support her allegations" of impairment.  Tr. 26.

Misick asserts the ALJ erred when he did not find Misick's testimony established her disability even though Dr. Morris's

medical opinion as reflected in the Multiple Impairment
Questionnaire supported her testimony.  Tr. 395-96.  The Court,
however, already has concluded the ALJ did not err when he
rejected Dr. Morris's responses to the Questionnaire.  In
addition, the ALJ noted Misick was noncompliant with Dr. Morris's
treatment recommendations.  Tr. 20, 330.  When evaluating a
claimant's credibility, an ALJ may consider an inadequately
explained failure of the claimant to follow a prescribed course
of treatment.  *See, e.g., Smolen*, 80 F.3d at 1284.

Misick further contends the ALJ erred when he rejected part
of Misick's testimony even though it was supported by the
testimony of her daughter and her husband.  Ann Marie Misick-
Teipel testified Misick generally is more irritable than she used
to be, has more frequent mood swings, and has a poor memory.
Tr. 424-27.  Misick-Teipel, however, did not specifically
indicate these symptoms occurred during the relevant period
ending December 31, 2001, and was not living in Misick's home
when Misick was struck by the truss in 1997.  Tr. 415-16, 424.

Ray Misick testified Misick is moodier and not as outgoing
since the truss accident.  Tr. 428-29.  He further testified
Misick is not good with money, is forgetful, has concentration
problems, does not see her friends as much as she did before the
accident, and has difficulty with housework.  Tr. 429-31.

The Court finds neither the testimony of Ann Marie Misick-

Teipel nor Ray Misick compels the conclusion that the ALJ should have accepted Misick's contention that she was disabled during the relevant period.  Accordingly, the Court concludes the ALJ did not err when he rejected portions of Misick's testimony because the ALJ provided legally sufficient reasons supported by evidence in the record for doing so.

**III. The ALJ's Assessment of Misick's RFC and Hypothetical to the VE.**

As noted, if the ALJ proceeds beyond Step Three, he must determine the claimant's RFC by assessing the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* SSR 96-8p.  Moreover, if the ALJ relies on the testimony of a VE to determine whether a significant number of jobs exist in the national economy that the claimant can do, the ALJ must base his hypothetical to the VE on all of the claimant's limitations.  *See Robbins*, 466 F.3d at 886 (When posing hypotheticals to a VE, the ALJ may not "disregard properly supported limitations.").

Misick contends the ALJ erred by improperly assessing her RFC.  Specifically, Misick contends the ALJ did not analyze her various impairments in combination as required by the regulations.  *See, e.g.*, 20 C.F.R. § 404.1523 (Commissioner must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if

22 - OPINION AND ORDER

considered separately, would be of sufficient severity.").  As a
result, Misick contends the ALJ posed an incomplete hypothetical
to the VE that was not an accurate representation of Misick's
limitations.

### A.    RFC Assessment.

In his opinion, the ALJ addressed medical opinions and
testimony related to Misick's alleged physical and mental
impairments during and after the relevant period and expressly
noted he considered her "severe and nonsevere impairments in
combination" when assessing her RFC.  Tr. 19-26.  The ALJ
concluded, in the light most favorable to Misick, that she
retained the RFC during the relevant period to "frequently lift
10 pounds, and occasionally lift up to 20 pounds.  She could sit,
stand, and walk six hours out of an eight-hour workday.  She
should have avoided hazards secondary to reported fatigue from
sleep deprivation."  Tr. 26.  Moreover, the ALJ's conclusion
about Misick's limitations are identical to the findings of State
Disability Determination Services (DDS)[4] physician Martin Kehrli,
M.D.  Tr. 287-92.  These limitations also are consistent with the
April 21, 1997, opinion of treating physician Dr. Hill.  Tr. 19,
137.

---

[4] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

**B.    Hypothetical to the VE.**

At the February 14, 2006, hearing, the ALJ presented the VE with the following hypothetical:

> I'd like you to consider a hypothetical individual. She's 47. She has a high school education and work history just described. And for purposes of this question, I'd like you to consider that she is limited from lifting and carrying more than ten pounds frequently, with an occasional 20-pound maximum. She's able to sit, stand, or walk six hours in an eight-hour day. And she should avoid hazards.

Tr. 28, 434.

Misick contends the ALJ's hypothetical was incomplete and inaccurate because it did not include significant limitations as reflected in the opinions of Drs. Emory, Morris, and Lechnyr. The Court, however, already has concluded the ALJ did not err when he rejected portions of the opinions of these doctors, and, therefore, the ALJ did not err when he omitted their opinions from the hypothetical to the VE. *See Thomas*, 278 F.3d at 954-55. *See also Robbins*, 466 F.3d at 886.

In summary, the Court concludes based on this record that the ALJ did not err in his assessment of Misick's RFC or in the hypothetical posed to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 10th day of August, 2007.

/s/ Anna J. Brown

_____

ANNA BROWN
United States District Judge

25 - OPINION AND ORDER